664 F.Supp. 455 (1987)
Peggy CRUTCHFIELD, Plaintiff,
v.
MAVERICK TUBE CORPORATION, Defendant.
No. 85-1441C(2).
United States District Court, E.D. Missouri.
July 14, 1987.
Thomas E. Bauer, St. Louis, Mo., for plaintiff.
Donald J. Meyer, Clayton, Mo., for defendant.

MEMORANDUM
FILIPPINE, District Judge.
This matter is before the Court for a decision on the merits after a non-jury trial. This action arises from plaintiff's discharge from employment with defendant. Plaintiff asserts that her discharge was based on sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Defendant is an employer within the meaning of Title VII. The Court adopts this entire memorandum as its findings of fact and conclusions of law under Fed.R.Civ.P. 52. Count II of plaintiff's complaint was dismissed in this Court's April 23, 1986 order. Only the Title VII claim remains.
Plaintiff began working for defendant in December, 1980. She worked in the storeroom, except for an eight-month interval as a truck driver in receiving, until she was transferred to the production line on October 16, 1983 pursuant to her request to Linda Mathews, plaintiff's storeroom supervisor. Plaintiff was hired to replace a male who had been discharged for inability to perform the utility man job. At the time plaintiff was moved, she was warned that if she failed to make it through the probationary period she would not be able to return to the storeroom if defendant had hired a replacement. Plaintiff worked on the production line until her termination on November 23, 1983. She then returned to the storeroom until the end of 1983 when she was laid off. She returned in April, 1984 and resigned on April 7, 1985. Plaintiff's November 23, 1983 discharge from the production line is the subject of this complaint.
Plaintiff has pleaded and tried this case on a disparate treatment theory. The Court does not understand plaintiff's arguments to embrace a disparate impact theory and, in any event, holds that such a basis of recovery is without support on the record. Further, plaintiff's counsel represented to the Court on the record that this action was directed to discriminatory discharge and not to any discriminatory failure to hire at an earlier date. Accordingly, the Court will direct the remainder of the memorandum and order to plaintiff's claim *456 of sex-based disparate treatment in connection with her discharge.
In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court established the now familiar burdens in a Title VII case. Plaintiff bears the initial burden of showing a prima facie case. The burden shifts to the defendant to articulate some legitimate, nondiscriminatory reasons for the adverse employment action. Should the defendant meet this burden, the plaintiff must then demonstrate that the legitimate reasons offered by the defendant were but a pretext for discrimination. See also Johnson v. Legal Services of Arkansas, Inc., 813 F.2d 893, 896 (8th Cir.1987).
The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against plaintiff remains with the plaintiff. The intermediate evidentiary burdens outlined above serve to bring litigants and the Court expeditiously and fairly to a resolution of plaintiff's claim of intentional discrimination. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). The question facing triers of fact in discrimination cases is both sensitive and difficult. The prohibitions against discrimination contained in the Civil Rights Act of 1964 reflect an important national policy, and proof of intentional discrimination will often rest only on circumstantial evidence. United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 716-17, 103 S.Ct. 1478, 1482-83, 75 L.Ed.2d 403 (1983).
When the district court does not dismiss the action for lack of a prima facie case, the defendant responds by offering evidence of the reason for plaintiff's discharge, the McDonnell-Burdine presumption drops from the case. The factfinder must then decide whether the discharge was discriminatory within the meaning of Title VII. Id. at 714-15, 103 S.Ct. at 1481-82. Since this matter is here after a trial on the merits, the Court must proceed to determine the ultimate issue of whether plaintiff's discharge was based on sex.
Defendant manufactures steel pipe used in the oil industry. The steel used to make the pipe comes in long sheets wound into a coil. The coil is placed on the uncoiler at the beginning of the production line. The coil is unwound and formed into the shape of a pipe. A seam is then welded down the middle. The welded steel is then cut into pipes about thirty-five to forty-two feet long. The pipe moves along the production line at nintey to one hundred thirty feet per minute. It takes approximately ten to twelve minutes to run a coil of steel through the line. The average pipe is quite heavy. It is forty feet long and weighs about 570 pounds.
Plaintiff's job was as utility man. In that job she was responsible for manually rolling these pipes from the conveyor onto an incline table. Sometimes these pipes would be bowed by the process and would have to be rolled by placing an ax handle in the pipe and pulling. If the pipe is severely bowed it must be dragged from the table. This sometimes takes two people. The utility man is also responsible for pulling or pushing the last piece of pipe of each coil, the "tail end," from the cut-off machine. Further, the utility man must break the weld or "scarf" which sometimes connects the pipes after it is cut into separate pipes. This is done by hitting the pipe with a hammer. Finally, the utility man is responsible for grouping scrap and helping the straightener operater move pipes which need to be reworked. In the course of these duties, plaintiff sometimes needed to operate the crane.
Troy Bales, currently an employee of defendant, was assigned to train plaintiff. Bales had previously worked in the utility man slot and worked as relief man during plaintiff's tenure on the production line. As relief man, Bales relieves all of the positions on the production line. His experience in the utility man slot and as the person assigned to train plaintiff coupled with his overall familiarity with the production line make him exceptionally qualified to gauge plaintiff's ability to perform her job.
*457 Bales credibly testified that plaintiff had difficulty pulling the tail ends from the cut-off machine and was only marginal in her ability to move the pipe off the conveyor to the incline table. She often needed help from others on the crew. Further she had difficulty operating the crane. Her inadequacy in operating the crane resulted in an injury to her elbow and prompted a written admonition from the supervisor, Steven Angell, to seek help if she could not do a job by herself.
Bales concluded that although plaintiff tried hard, she fell short in all aspects of the job as utility man. He obtained Angell's permission to try plaintiff in other positions but she was unable to handle these also. Angell then decided that plaintiff should be terminated from her position as utility man since she was a safety hazard to herself and others. If a less strenuous job could not be found, she should be terminated. Plaintiff was subsequently transferred back to the storeroom.
Plaintiff's ability to perform her job on the production line is clearly a legitimate criterion for determining whether she should be discharged. The evidence showed that if plaintiff was not able to move the pipe quickly enough, the production line would have to be shut down. There was also the danger that these pipes would fly off the conveyor. Further, her inability to operate the crane was a clear hazard as is demonstrated by plaintiff's own injury.
Plaintiff's testimony is called into doubt by her evident willingness to exaggerate to help her case. While she testified that there was always a warning when a bowed pipe was coming, the weight of the other testimony established that there was rarely a warning. Plaintiff also testified that the pipes did not bow more frequently at the beginning and end of the coil of steel; other testimony established that this was the case. Finally, she offered her duties at Chrysler with details about great weights she had moved as evidence of her strength. Her supervisor at Chrysler, Mr. John Kennedy, stated that "anybody with a normal strength could do the jobs."
Plaintiff relies on evidence of sexist statements and acts by Angell and Bales, and it is clear that such statements are relevant in a Title VII case. See Goodwin v. Circuit Court of St. Louis County, 729 F.2d 541 (8th Cir.1984). Three of the people who testified about these statements, however, were employees who were fired (plaintiff, Weller, and Manasco). Further Angell and Bales deny the remarks.
Plaintiff also offers evidence of lack of women in production and the existence of easier jobs in which she could have been placed. Statistical evidence can be used to show discriminatory motive in a disparate treatment case. International Brotherhood of Teamsters v. United States, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Such evidence is not determinative in a single employee case. Harper v. Trans World Airlines, 525 F.2d 409 (8th Cir.1975). Evidence of a pattern and practice is also admissible. Osborne v. Cleland, 620 F.2d 195 (8th Cir.1980). It is not clear how many women have applied to work in the production department, and the other, easier positions to which plaintiff alludes are required by the collective bargaining agreement to be filled by employee bidding based on seniority.
Plaintiff also offers evidence to show that the bonus paid to the employees on the line stayed the same while she worked there. The evidence showed that the bonus, which is based on the productivity of the line, varies depending on many factors. The Court finds that evidence of the bonus during plaintiff's seventeen days on the line is entitled to very little weight.
The Court finds that plaintiff's evidence particularly fails in the area of establishing that she was sufficiently strong to perform the required work safely. Although some of her co-employees testified that she did the work adequately, the person charged with training her and her supervisor credibly testified that she was inadequate. The Court does not give much weight to defendant's test to establish the requisite force to pull a pipe from the conveyor since defendant did not show that work conditions and test conditions were *458 the same. Nonetheless, it is clear that the utility position was demanding work that involved frequent manual moving of very heavy pipe. Failure to perform adequately threatened the safety of plaintiff, her co-workers and the productivity of the plant. The Court finds that plaintiff's prior employment in the Maverick Tube storeroom and at Chrysler were not as strenuous as the utility man job. The other jobs may have involved occasional strenuous efforts, but the extreme weight of the pipes and means and frequency with which they were moved set this type of work apart from plaintiff's earlier employment.
In short, the Court finds that plaintiff was discharged because she was not strong enough to safely perform the job of utility man. The Court recognizes that in cases where mixed motives are found, relief is appropriate. Bibbs v. Block, 778 F.2d 1318 (8th Cir.1985). The Court finds that sex played no part in plaintiff's discharge and, therefore, the mixed motive analysis is inappropriate. Id. at 1321.
The Court finds that plaintiff's complaint was not frivolous, unreasonable, or without foundation and will deny defendant's request for attorney's fees. Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1977).

JUDGMENT
In accordance with the memorandum filed this date and incorporated herein,
IT IS HEREBY ORDERED, ADJUDGED and DECREED that defendant shall have judgment on plaintiff's complaint and that plaintiff's complaint is DISMISSED with prejudice. Plaintiff shall pay the costs of this action.