**Peggy CRUTCHFIELD, Appellant,**

v.

**MAVERICK TUBE CORPORATION, Appellee.**

**No. 87–1990.**

United States Court of Appeals, Eighth Circuit.

Submitted March 17, 1988.

Decided Aug. 16, 1988.

Thomas E. Bauer, St. Louis, Mo., for appellant.

Donald J. Meyer, Clayton, Mo., for appellee.

Before McMILLIAN, BOWMAN and BEAM, Circuit Judges.

McMILLIAN, Circuit Judge.

Peggy Crutchfield appeals from a final judgment entered in the District Court[1] for the Eastern District of Missouri in favor of the Maverick Tube Corporation (Maverick) denying her Title VII claim for sex discrim-

1. The Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri.

ination. For reversal, Crutchfield argues that the district court's determination that she was not terminated from her employment because of sex discrimination is clearly erroneous. For the reasons set forth below, we affirm.

Crutchfield was hired by Maverick in December 1980. Except for an eight-month interval as a receiver truck driver, Crutchfield worked in Maverick's storeroom. Pursuant to her request, Crutchfield was transferred to the production line as a utility worker. Crutchfield's duties consisted primarily of manually rolling pieces of pipe off a moving conveyor onto an incline table. Crutchfield's job also required her to pull, push and drag steel pipe forty feet long, weighing five hundred and seventy pounds. This pipe was manufactured on a · mill that ran pipe at the rate of ninety to one hundred and thirty feet per minute. Crutchfield had to move a forty foot, five hundred and seventy pound piece of pipe every twenty to thirty seconds. Moreover, pipe at the beginning and end of each coil is bowed. The end of each coil is referred to as the "tail end" and must be manually pulled out of the cutoff machine. Crutchfield at times was required to operate an overhead crane.

On November 21, 1983, shortly after her transfer, Crutchfield's supervisor issued a negative probationary evaluation report on Crutchfield's performance as a utility worker on the production line. The report recommended Crutchfield's termination from the production line because Crutchfield was not strong enough to handle the job and she presented a safety hazard to herself and her fellow employees. The report further recommended placing her in a position "where strength is not so important." Manually pulling the tail end out of the cutoff, manually removing pipe from the conveyor and operating an overhead

crane were essentially the duties with which Crutchfield had difficulty. Two days later Maverick terminated Crutchfield from the production department. After this termination Crutchfield was assigned on a temporary basis to her former storeroom position until December 31, 1983, when Maverick laid her off. Crutchfield returned to work in the storeroom in early April 1984. One year later on April 8, 1985, Crutchfield resigned. It is Crutchfield's termination from the production line that is the focus of her complaint.

On February 14, 1984, Crutchfield filed a charge of sex discrimination with the Equal Employment Opportunity Commission. Upon receiving her right to sue letter, Crutchfield brought suit against Maverick alleging sex discrimination [2] in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2. Crutchfield alleged that Maverick terminated her as utility worker because of sex-based animus against women as a class and her as an individual. Trial was held and the district court held in Maverick's favor.

Applying the analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981),[3] the district court found that Crutchfield had demonstrated a *prima facie* case of sex discrimination. The district court next considered Maverick's explanation that Crutchfield was terminated because of her inability to perform her job on the production line. *Crutchfield v. Maverick Tube Corporation*, 664 F.Supp. 455 (E.D.Mo.1987). The district court concluded that this was a "clearly legitimate criteria for determining whether she should be discharged." *Id.* at 457. On the ultimate factual issue of whether Crutchfield had been terminated because of sexual discrimination, the dis-

---

**2.** Crutchfield pleaded and tried this case as a disparate treatment case. We note that the district court correctly found that such a basis of recovery was absent support on the record.

**3.** Under the *McDonnell Douglas/Burdine* analysis, the plaintiff must establish a prima facie case of sex discrimination and, if she does so, the defendant must articulate a legitimate, non-

discriminatory reason for the employment decision. The burden of producing evidence then shifts back to the plaintiff to demonstrate that the defendant's articulated reason was pretextual. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094. The burden of persuasion at all times remains with the plaintiff. *Id.* at 256, 101 S.Ct. at 1095.

trict court found that Maverick terminated Crutchfield because she was not strong enough to safely perform the job of utility worker, rather than on the basis of her sex. *Id.* at 458; *see United States Postal Service v. Aikens,* 460 U.S. 711, 714–15, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983). The district court, therefore, rejected Crutchfield's claim for relief.

On appeal Crutchfield argues that the district court's finding that Maverick did not discriminate against her on the basis of her sex is clearly erroneous. Crutchfield alleges she demonstrated sex discrimination in violation of Title VII through (1) the testimony of male co-employees, (2) statistics proving Maverick maintains a sex segregated work force, (3) sexist statements made by Maverick employees, and (4) a higher percentage of bonus made while she was on the production line. We do not agree because the evidence in this case amply supports the district court's decision.

The ultimate issue of fact in cases such as this is whether the employer intentionally discriminated against the employee. *United States Postal Service v. Aikens,* 460 U.S. at 714–15, 103 S.Ct. at 1481–82. We cannot reverse the district court's factual determination unless we conclude it is clearly erroneous. *See* Fed.R.Civ.P. 52(a). A finding of fact is clearly erroneous when "although there is evidence to support it the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)); *see also Danzl v. North St. Paul–Maplewood–Oakdale Independent School District No. 622,* 706 F.2d 813 (8th Cir.1983). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City,* 470 U.S. at 573–74, 105

S.Ct. at 1511 (citations omitted). Moreover, Rule 52(a) demands great deference when findings are based on determinations regarding the credibility of witnesses. *Id.*

The district court found that Crutchfield's ability to perform her job on the production line was "clearly a legitimate criterion for determining whether she should be discharged." The evidence showed that if a utility worker was not able to move the pipe fast enough, the production line would have to be shut down, and that Crutchfield had difficulties performing the manual and essential aspects of employment as a utility worker— she had difficulties pulling the tail ends from the cutoff within defined time constraints, and operating the crane as required. Thus, the district court found that the actions undertaken by Maverick were not discriminatory.

We cannot say, after reviewing the record, that we are left with a definite conviction that a mistake was made. To sustain Crutchfield's position we would have to find that Maverick's decision to terminate her from the utility line was not supported by the record. The record shows to the contrary. We thus hold that the finding reached below was not clearly erroneous.

Accordingly, the judgment of the district court is affirmed.