868 F.Supp. 1184 (1994)
Elmer WEBB, Plaintiff,
v.
Edward J. DERWINSKI, Secretary of Veterans Affairs, Defendant.
No. 4:92CV01508 ELF.
United States District Court, E.D. Missouri, Eastern Division.
October 15, 1994.
*1185 Edward K. Fehlig, Ziercher and Hocker, St. Louis, MO, for plaintiff Elmer Webb.
Wesley D. Wedemeyer, Office of U.S. Atty., St. Louis, MO, for defendant Edward J. Derwinski, Superintendent of Veterans Affairs.

MEMORANDUM
FILIPPINE, Chief Judge.
This matter is before the Court for a decision on the merits after a nonjury trial. The Court adopts this memorandum opinion as its findings of fact and conclusions of law, pursuant to Federal Rule of Civil Procedure 52.
This action arises from plaintiff's application for the position of Accounting Technician at the Veterans Administration Medical Center in St. Louis, Missouri. Plaintiff asserts that he was discriminated against on the basis of age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., and on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (as amended), *1186 when another applicant was selected to fill the job position of Accounting Technician. As part of his age discrimination claim, plaintiff also alleges the Veterans Administration "experience requirement" and "merit promotion program" discriminates against older workers of plaintiff's age. In addition, plaintiff asserts a state law claim for breach of contract. Plaintiff seeks backpay, attorney fees, a fiscal position at an entry level, and punitive damages.
Plaintiff has been employed with the Veterans Administration ("VA") Medical Center as a Food Service Worker since approximately March, 1983. In August, 1990, plaintiff, a black male who is 59 years old, applied for an open position as an Accounting Technician with the VA Medical Center. The "Vacancy Announcement" stated "This is An Opportunity to Achieve Upward Mobility." As part of the VA's Upward Mobility Program, the VA announced a policy in August, 1990, of filling certain positions at a "trainee level" with less stringent qualification requirements, thereby expanding the applicant pool for positions with known promotion potential. As applied to the open position for Accounting Technician, the designation of "Upward Mobility" meant that the position was actually rated as a GS-6 level job; however, those applicants who qualified at the GS-5 level would also be considered for the position.[1] The qualifications listed for the position were:
GS-5 level: One (1) year of specialized experience equivalent to GS-4.
GS-6 level: One (1) year of specialized experience equivalent to the next lower grade level (GS-5).
In addition, the job announcement defined specialized experience as "experience which is directly related to the position to be filled and which has equipped the candidate with the particular knowledge, skills and abilities to successfully perform the duties of that position. To be creditable, experience must have been at least equivalent to the next lower grade level." The announcement further stated that "certain education may be substituted for some of the required experience."
The job announcement directed applicants to complete the Employee Supplemental Qualifications Statement, describing those activities which demonstrate possession of the job elements listed. This job announcement also informed applicants that the aforementioned form "will be used as the primary source document for determining basic qualifications and for rating purposes. Failure to furnish this information or providing incomplete or inaccurate information may make it impossible to determine an applicant's qualifications or to give an applicant full credit under the rating procedures." Applicants were also told where a copy of the form could be obtained.
In addition, the job announcement listed the expected duties of an Accounting Technician as follows:
Receives purchase orders, contracts, travel orders, VAF 1358's miscellaneous obligations, and similar documents for obligation against appropriated funds. Obligates (sic) documents assigning appropriate symbolic codes for the general ledger accounts, obligation account, control point and cost center, limitation and appropriation. Liquidates obligation upon notification of goods or services ordered. Reconciles monthly all subsidiary CALM listings with appropriate general ledger balances. Prepares vendor invoices for payment. Continually reviews and follows up on outstanding obligations. Processes other miscellaneous disbursement and collection documents and classifies into the appropriate general ledger accounts. Designated as the Alternate for the Agent Cashier.
Medical Center employees interested in applying for the position were also directed to complete "Form 172" if their personnel folder did not contain a record of all qualifying *1187 experience, training, self-development, or outside activities.
In connection with the application process, plaintiff did not complete the "Supplemental Qualifications Statement." Plaintiff also did not complete "Form 172," but instead submitted "Form 171," which is more detailed than "Form 172." This form instructed plaintiff that if a job encompassed more than one duty, plaintiff should indicate the specific percentage of time spent doing each task.
In addition to plaintiffs current part-time employment as a Service Worker for the Veterans Administration and full-time employment as a security guard, plaintiff's Form 172 listed the following work experience: Plaintiff had been self-employed as a real estate broker for the previous ten years. In this capacity, plaintiff trained and supervised agents, maintained documents pertaining to sales transactions, managed property for a church, prepared church proposals for special housing projects, and completed payroll and income tax. Plaintiff worked full-time from July, 1976, to April, 1977, as a supervisor for Directory Distributors where his responsibilities included hiring, training, scheduling routes, and supervising one to three office personnel. In this capacity, he maintained pay records, prepared daily statistical reports, and handled complaints. Plaintiff also had previously been employed cleaning a skating rink. Plaintiff did not indicate the specific percentage of time spent on individual job tasks for any of the work experience listed.
On September 7, 1990, plaintiff was informed that a determination had been made that he was not qualified for the position because he did not meet the experience requirement. In making this determination, the VA personal management specialist credited plaintiff with 5.4 months of specialized experience as a result of his 87 hours of college credit. None of plaintiff's work experience was credited toward the specialized experience requirement. As a result, the VA determined that plaintiff did not qualify as a GS-5 because he did not have at least one year of specialized experience at a GS-4 level.
Although plaintiff's complaint does not specifically delineate his claims as such, the allegations appear to raise claims under both disparate treatment and disparate impact theories of discrimination.

Disparate Treatment
In a disparate treatment claim, "[t]he employer ... treats some people less favorably than others because of their race, color, religion, sex, or [other protected status]." International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). "Liability depends on whether the protected trait actually motivated the employer's decision." Hazen Paper Co. v. Biggins, ___ U.S. ___, ___, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993). In the absence of direct evidence, disparate treatment claims are evaluated under the three-step analysis articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 1824-26, 36 L.Ed.2d 668 (1973). Under this analysis, a plaintiff must first establish a prima facie case of discrimination. The burden of production then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action. If the defendant articulates such a reason, the burden shifts back to the plaintiff to prove that his justification is merely a pretext for discrimination. McDonnell Douglas, 411 U.S. at 801-05, 93 S.Ct. at 1824-25. The plaintiff retains the burden of persuasion at all times and must convince the trier of fact by a preponderance of the evidence that he was the victim of discrimination. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254-56, 101 S.Ct. 1089, 1094-95, 67 L.Ed.2d 207 (1981).
To establish a prima facie case of disparate treatment, a plaintiff must present evidence sufficient to raise an inference of discrimination. As a general rule, a plaintiff can meet this burden by showing 1) plaintiff belongs to a protected class, 2) plaintiff applied and was qualified for a job for which the employer was seeking applicants, 3) despite being qualified, plaintiff was rejected for the position, and 4) after plaintiff was rejected, the position remained open and the employer continued to seek applicants from *1188 persons of comparable qualifications. Gilty v. Village of Oak Park, 919 F.2d 1247, 1251 (7th Cir.1990).
However, this four-step process does not fit all factual situations. For example, an inference of discrimination, especially in cases alleging class-wide discrimination, may be established from a statistical showing of disparity between members of the plaintiff's class and comparably qualified members of the majority group. Segar v. Smith, 738 F.2d 1249, 1266 (D.C.Cir.1984). All evidence that a plaintiff presents can contribute to the inference of discrimination and should be considered cumulatively. See EEOC v. American National Bank, 652 F.2d 1176, 1188 (4th Cir.1981) (reliance on "cumulation" of evidence including statistics, patterns, practices, general policies, or specific instances of discrimination), cert. denied, 459 U.S. 923, 103 S.Ct. 235, 74 L.Ed.2d 186 (1982); and Crutchfield v. Maverick Tube Corp., 664 F.Supp. 455, 457 (E.D.Mo.1987) (statistical as well as pattern and practice evidence are admissible to show discriminatory motive in a disparate treatment case).
In this case, plaintiff alleges that he was discriminated against on the basis of both age and race when the VA did not hire him for the position of Accounting Technician. In support of this contention, plaintiff not only presented evidence regarding this alleged isolated occurrence of discrimination, but also introduced evidence regarding previous occasions where his applications for positions in the fiscal department were rejected to support an alleged on-going practice of discrimination. In addition, plaintiff introduced statistical evidence in support of his race discrimination claim. Under the circumstances, therefore, the Court will examine not only the evidence surrounding plaintiff's application for Accounting Technician, but the other surrounding evidence as well to determine whether plaintiff has met his initial burden of raising an inference of age and/or race discrimination.
The Court's analysis will begin by reviewing plaintiff's 1990 application for the position of Accounting Technician. The Vacancy Announcement stated that the minimum requirement for the position was one year of specialized experience at a GS-4 level. Plaintiff has not presented any evidence that he had the specialized experience necessary to qualify for this position. The VA credited plaintiff with 5.4 months of experience due to his college credits. However, plaintiff did not show how any of his past previous experience was directly related to the job of Accounting Technician. Moreover, even if some of plaintiff's past experience, such as maintaining payroll records, could be applied toward the "specialized experience" requirement, there is absolutely no evidence of how much time plaintiff spent performing such work. Therefore there is no basis to determine how much credit would be appropriate. As a result, plaintiff has not shown that he was a qualified applicant for the position; he has failed to make a prima facie case, and the Court finds that an inference of disparate treatment discrimination arising from the VA's rejection of his application for Accounting Technician has not been established.
In further support of his claim, however, plaintiff additionally asserts that from 1980 through 1990, the VA rejected all of his applications for fiscal-related positions thereby demonstrating an on-going practice of disparate treatment preventing him from obtaining "specialized experience" in the fiscal area. In support, plaintiff raises three different occasions where his applications or inquiries regarding openings for such positions were rejected.
Plaintiff's first application for a job in the VA's fiscal department occurred before plaintiff was employed with the VA. On August 14, 1979, plaintiff received a "Notice of Rating" from the U.S. Office of Personnel Management. This notice informed plaintiff that he would be eligible for employment as a Payroll Clerk for the next twelve months. Plaintiff thereafter applied for such a position with the VA. However, he was notified by letter dated May 22, 1980, that the VA would not consider his application because it had received an adequate number of applications from VA employees and under the VA's merit promotion program, the VA was not required to consider outside applicants.
*1189 Next, in 1984, plaintiff applied for an open position as an Accounting Technician. Plaintiff was informed by letter dated April 17, 1994, that he had not been selected for the position because he did not fulfill the experience requirement.
On a third occasion, plaintiff inquired about a vacancy announcement for a Payroll Clerk position which was posted in November, 1985. The announcement stated that, to qualify, an applicant must have at least one year of general experience and one year of specialized experience. When plaintiff requested a copy of the information sheet showing the qualifications for the position, the personnel supervisor told plaintiff that a copy could not be made because the copying machine was broken. The personnel supervisor then asked plaintiff if he had a four-year degree or two years of experience. After plaintiff responded, "No," he was told that he did not qualify for the position.
Of the three occurrences raised by plaintiff in support of his disparate treatment claim, plaintiff has established that he was a qualified applicant only for the 1980 Payroll Clerk position. The VA's stated reason for not considering plaintiff's application for this position was its merit promotion policy. A decision to promote from within a company is a legitimate business reason for hiring one individual over another. See Schwenke v. Skaggs Alpha Beta, Inc., 858 F.2d 627, 629 (10th Cir.1988). Moreover, there is absolutely no evidence to indicate that the VA's stated reason for not considering plaintiff's application was a pretext for discrimination.
As additional support of his disparate treatment claim, plaintiff points out that when he inquired about the Payroll Clerk position in 1985, the personnel supervisor told him that he needed either a four-year degree or two years of work experience. Plaintiff states that he was not told that he could combine his work experience and education to meet the job qualifications. However, the only evidence of the VA's policy allowing applicants to "combine" work experience and education was presented in relation to plaintiff's application for the 1990 position of Accounting Technician. There is absolutely no evidence that this policy was in effect in 1985. Moreover, the copy of the policy itself that was presented into evidence is dated September, 1987. In addition, as previously discussed, even if some of plaintiff's work experience would have counted toward the requirements for the Payroll Clerk position, no evidence was presented that plaintiff had a sufficient amount of such experience to meet the job qualifications.
Additionally, plaintiff presented no evidence at all in regard to the necessary qualifications for the 1984 opening for Accounting Technician. The only evidence present in regard to his qualifications for the position was his testimony that he felt he was qualified based on his education and work experience as a salesperson for two and one-half years and as a debit agent for an insurance company. No evidence was presented that plaintiff performed fiscal-related duties in either of these positions. Plaintiff has completely failed to show that he was qualified for this position.
In addition to the isolated instances of alleged disparate treatment, plaintiff also submitted statistical evidence to support his claim that the VA discriminated against him on the basis of race. The statistics show that the population of employees in fiscal-related jobs consisted on March 31, 1991, of two blacks out of thirty-six individuals; on September 30, 1992, two blacks out of twenty-eight individuals; and on March 31, 1993, three blacks out of thirty individuals.
"While statistics may not be a determinative factor in an individual, as opposed to class action, discrimination case, ... they may often be probative and supportive of an individual employee's allegation that an employer has discriminated against him or her on impermissible grounds. Harper v. Trans World Airlines, Inc., 525 F.2d 409, 412 (8th Cir.1975). However, in this case the Court finds that plaintiff's statistical evidence is not probative of disparate treatment on the basis of race. Plaintiff's statistics show that defendant hired a relatively small number of blacks for accounting-related or fiscal jobs. This has little probative value, however, because its underlying statistic (the black general population) includes those who are not *1190 qualified for the positions. The more relevant data would show the number of qualified blacks hired for these jobs. The statistics plaintiff provides, standing alone, are insufficient to support a claim of discrimination. See Coble v. Hot Springs School District No. 6, 682 F.2d 721, 733 (8th Cir.1982).
In sum, the Court finds that plaintiff has failed to provide probative evidence sufficient to support a prima facie case of disparate treatment on the basis of either his age or race.

Disparate Impact
Plaintiff additionally alleges that the VA's "experience requirement" and "merit promotion program" discriminate against older workers of plaintiff's age. Plaintiff does not allege that these result in racial discrimination.
Disparate impact claims are those that are facially neutral but that fall more harshly on one group than another and cannot be justified on the basis of business necessity. Leidig v. Honeywell, Inc., 850 F.Supp. 796, 801 (D.Minn.1994). To establish a prima facie case of disparate impact, plaintiff must demonstrate that a specific employment practice or policy has a significant discriminatory impact on a protected group. As a general rule, such a showing is made by the use of statistics. Id.
As a preliminary matter, the Court notes that the Supreme Court recently stated that it has "never decided whether a disparate impact theory of liability is available under the ADEA." Hazen v. Biggins, ___ U.S. ___, ___, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993). However, in pre-Biggins decisions, the Eighth Circuit has held that disparate impact claims are cognizable under the ADEA. Therefore, this Court will assume that such a claim is cognizable.
Plaintiff has provided absolutely no statistics to support his claim that either the "experience requirement" or the "merit promotion program" have a disparate impact on older workers. The extent of plaintiff's support is his own conclusory allegation. As a result, plaintiff has failed to provide any probative evidence to support a prima facie claim of disparate impact.

Breach of Contract
As a final claim for relief, plaintiff alleges that the VA breached its contractual duty under the terms of the VA's "Upward Mobility Program." Under this program, plaintiff would have been eligible for consideration for the Accounting Technician at a salary grade level of GS-6 if he qualified for a salary grade level GS-5. To qualify at the GS-5 level, plaintiff needed at least one year of specialized experience. This experience requirement could be met by applying a combination of plaintiff's education and work experience. As previously discussed, plaintiff failed to establish that the combination of his education and work experience qualified him to be considered for a GS-5 position. As a result, the VA did not have a duty under the "Upward Mobility Program" to consider plaintiff for the position of Accounting Technician. Therefore, plaintiff's breach of contract claim must also fail.
The Court notes that during trial defendant offered into evidence a certain document labeled "Exhibit M" for the purpose of rebutting plaintiff's testimony that he timely presented his discrimination claim to an EEO counselor. Plaintiff's objection to this evidence was taken with the case. Because this Court finds that plaintiff has failed to establish a case of either disparate treatment or disparate impact, the Court will not address the issue of the timeliness of plaintiff's contact with an EEO counselor. As a result, there is no need for the Court to rule on the objection to this evidence.
As defendant has prevailed in this matter, plaintiff's request for reasonable attorney's fees is denied. 29 U.S.C. § 626; 42 U.S.C. § 2000e-5.
An appropriate judgment will accompany this memorandum.
NOTES
[1] The only evidence presented during trial regarding this program was a copy of an information sheet titled "Upward Mobility" which generally outlines the program. However, an uncontroverted affidavit is part of the pretrial record which explains the purpose of the program in more specific terms and explains how the program applied to the open position of Accounting Technician which is at issue in this case.