**Joan Rance VUYANICH**

v.

**REPUBLIC NATIONAL BANK OF DALLAS.**

**Civ. A. No. CA 3–6982–E.**

United States District Court, N. D. Texas, Dallas Division.

March 12, 1976.

Joann Peters, Welz, Anderson & Peters, Dallas, Tex., for plaintiff.

J. Carlisle DeHay, Jr., Gardere, Porter & DeHay, Dallas, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

MAHON, District Judge.

This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ["the Act"], and under 42 U.S.C. § 1981, alleging racial and sexual discrimination in employment. Defendant has filed a motion to strike Plaintiff's allegations with respect to sex discrimination

Plaintiff, a Negro woman, was dismissed from the employ of Defendant and subsequently filed written charges of discrimination with the Equal Employment Opportunity Commission ["EEOC"]. The Commission found reasonable cause to believe that Defendant had committed a violation of the Act and issued Plaintiff a right-to-sue letter. Plaintiff properly filed this action with the Court within the time period required by the Act.

In her charge with the EEOC, Plaintiff alleged that Defendant had discriminated against her, in violation of the Act, by discharging her because of racial prejudice. In her sworn charge of August 13, 1969, Plaintiff further stated that:

a) She was the only Negro in her department.

b) She and two Caucasian females, also new employees undertaking training, were instructed to do the same type of work but after being trained, the two Caucasians did not want to do their share of the work load.

c) She informed her immediate Supervisor, who agreed with her that the two Caucasian female co-workers should help with the work load.

d) The Supervisor talked to the two co-workers several times about the matter.

e) About a month after she had been working for the Respondent, her Supervisor, who knew of her dating a Caucasian told her that the world was not ready for mixed marriages.

f) She married a Caucasian on June 28, 1969.

g) On July 23, 1969, when her husband went to take her to lunch, she introduced him to the Supervisors of her department.

h) The following morning, she was called into conference by her Supervisor and was told that she was not suitable for the job because of a "personality clash" with her co-workers in her department.

i) Her Supervisor also told her that she probably did not need a job anyway because her husband was a Caucasian.

District Director's Findings of Fact, EEOC, Dallas District Office, *Vuyanich v. Republic National Bank*, May 23, 1972, at 2 ["EEOC/DDFF"].

The District Director of the Dallas District Office of the EEOC made,

among others, the following findings of fact:

a) It is undisputed that the reason for discharging the Charging Party was because of obvious personality conflicts between the Charging Party and two Caucasian female co-workers, all new employees and trainees in the position of Contact Clerk, Money Order Section.

b) At least two presently employed (at the time of the investigation) and one former Negro employee of the Respondent confirm that one of the Charging Party's Caucasian co-workers, Caucasian A, was racially prejudiced and did not like working with Negroes.

c) The Respondent Supervisor was aware of the problem, but did not take affirmative steps by means of transferring the Charging Part or the Caucasian to another job, but instead, to solve the problem, chose to discharge the Charging Party.

EEOC/DDFF at 6.

Defendant has moved to dismiss Plaintiff's allegations as to discrimination on the basis of sex, on the ground that the charge filed with and investigated by the EEOC was based entirely on racial discrimination.

The law in the Fifth Circuit regarding variance between charges and complaints in actions under the Act is governed by *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970) ["*Sanchez*"], recently reaffirmed and elucidated in *Gamble v. Birmingham So. RR. Co.*, 514 F.2d 678 (5th Cir. 1975) ["*Gamble*"].

In *Sanchez*, Plaintiff had originally charged sex discrimination, but the EEOC investigation revealed national origin discrimination. The complaint in federal court included an allegation of national origin discrimination. Citing *King v. Georgia Power Co.*, 295 F.Supp. 943 (N.D.Ga.1968) ["*King*"], the *Sanchez* court found "sufficient continuity running through the original charge and the amended charge to the judicial proceedings which followed" to allow the com-

plaint to stand. *Sanchez*, 431 F.2d at 465.

We found in *Sanchez* that the purpose of the charge is to trigger the investigatory and conciliatory procedures of the EEOC. It was logical to limit the scope of the civil action to the scope of the EEOC investigation "which can reasonably be expected to grow out of the charge of discrimination." *Sanchez v. Standard Brands, Inc., supra*, at 466. We further emphasized the importance of the Commission's role in obtaining voluntary compliance. On the other hand, we also emphasized our reluctance to allow procedural technicalities to bar claims under the Act, *id.* at 461, 465, and that "the scope of an EEOC complaint should not be strictly interpreted." *Id.* at 465; see also *Tipler v. E. I. duPont*, 6 Cir. 1971, 443 F.2d 125, 131. *Gamble*, 514 F.2d at 687–688. The *Sanchez* court held that allegations in the complaint filed with the federal district court "may encompass any kind of discrimination *like or related to* allegations contained in the charge and growing out of such allegation during the pendency of the case before the Commission. [emphasis added]." *Sanchez*, 431 F.2d at 466; *King*, 295 F.Supp. at 947.

While *Sanchez* involved a situation where an EEOC investigation, and a complaint based thereon, exceeded the scope of the original charge to the EEOC, the court in *Gamble* was faced with a complaint that exceeded both the charge and the EEOC investigation. *Gamble* was a suit by a class of Black switchmen against a defendant railroad company. The gravamen of the plaintiffs' claim was that they had consistently been denied the right to qualify as conductors, and this complaint to the EEOC was so limited. The EEOC investigation was also limited to an investigation of whether the defendant violated the Act "by denying promotional opportunity to negro switchmen, as alleged." *Gamble*, 514 F.2d at 687. Before the district court, however, the plaintiffs also complained that they were denied

promotion to supervisors. The district court held that supervisory promotions where outside the permissible scope of the trial. The evidence adduced at trial, nevertheless, showed that virtually all supervisors were chosen from the conductor roster. The Fifth Circuit, in reversing the district court, held that "charges are to be liberally construed, . . . [so] the complaint that 'I was not allowed to promote to conductor' implicitly includes the complaint that 'I was not allowed to promote to supervisor,' since supervisors are chosen from the ranks of conductor." *Id.* at 688.

> The supervisor complaint is certainly "like or related to" the conductor complaint and an investigation of the supervisor situation could reasonably be expected to grow from the original complaint. Nevertheless, the EEOC apparently did not in fact investigate beyond the conductor charge. This, says the Railroad, limits the permissible scope of the complaint in the federal court.
>
> The Railroad further urges that it has a right to attempt conciliation on the supervisor question. As we have indicated, the statutory scheme contemplates conciliation. But we have clearly held that conciliation efforts by the EEOC are not a jurisdictional prerequisite to a Title VII suit. We have also held that a plaintiff may maintain a suit even when the EEOC has found no reasonable cause to believe discrimination has occurred. Therefore, although conciliation is encouraged, it is not an inalienable right of a defendant, especially where, as here, conciliation attempts with the defendant on a similar question failed. [citations and quotation omitted].

*Id.*

The Fifth Circuit in *Gamble* went on to discuss other policies besides conciliation that should be considered. These policies include the protection of the equality of opportunity among all employees and prospective employees, the fact that the charging party may be ignorant of or unable to thoroughly describe the discriminatory practices to which they are subjected, and the judicial economy in not requiring the plaintiffs to go back to the EEOC to begin anew with their additional allegations.

The interpreting the *Sanchez* doctrine, this Court must also be ever mindful of the considerations and guidelines laid down by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) ["*Green*"]. In that case, the Supreme Court held that the absence of an EEOC finding of reasonable cause did not bar a suit in federal court under the Act.

> Respondent satisfied the jurisdictional prerequisites to a federal action (i) by filing timely charges of employment discrimination with the Commission and (ii) by receiving and acting upon the Commission's statutory notice of the right to sue, 42 U.S.C. §§ 2000e–5(a) and 2000e–5(e). The Act does not restrict a complainant's right to sue to those charges as to which the Commission has made findings of reasonable cause, and we will not engraft on the statute a requirement which may inhibit the review of claims of employment discrimination in the federal courts. The Commission itself does not consider the absence of a "reasonable cause" determination as providing employer immunity from similar charges in a federal court, 29 CFR § 1601.30, and the courts of appeal have held that, in view of the large volume of complaints before the Commission and the nonadversary character of many of its proceedings, "court actions under Title VII are de novo proceedings and . . . a Commission 'no reasonable cause' finding does not bar a lawsuit in the case." [citations omitted].

*Green*, 411 U.S. at 798–799, 93 S.Ct. at 1822–1823, 36 L.Ed.2d at 675–676.

The Third Circuit, has construed the *Sanchez* doctrine in light of *Green*. In *Wetzel v. Liberty Mutual Ins. Co.*, 511 F.2d 199 (3d Cir. 1975) ["*Wetzel*"], the plaintiffs checked the wrong box on the EEOC "Notice of Charge" form. The

*Wetzel* court held that the only jurisdictional prerequisites to a suit in federal court under the Act were a timely filing of charges with the EEOC and the receiving and acting on the EEOC notice of right to sue. Lay persons, the *Wetzel* court reasoned, were not to be denied access to the federal courts because of a technical error. Such denial would seriously undermine the policies of the Act. *Wetzel*, 511 F.2d at 202–203.

Finally, in *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) [*"Alexander"*], the Supreme Court further elaborated on the policies it had enunciated in *Green.* *Alexander* involved the issue of whether a labor arbitration agreement could bar a suit under the Act. In commenting on the importance of the complainants role in the statutory scheme of the Act, the Court stated:

> Even in its amended form, however, Title VII does not provide the Commission with direct powers of enforcement. The Commission cannot adjudicate claims or impose administrative sanctions. Rather, final responsibility for enforcement of Title VII is vested with federal courts. The Act authorizes courts to issue injunctive relief and to order such affirmative action as may be appropriate to remedy the effects of unlawful employment practices. 42 U.S.C. §§ 2000e–5(f) and (g) (1970 ed., Supp. II). Courts retain these broad remedial powers despite a Commission finding of no reasonable cause to believe that the Act has been violated. *McDonnell Douglas Corp. v. Green, supra*, 411 U.S. at 798–799, [93 S.Ct. 1817, at 1822–1823, 36 L.Ed.2d 668]. Taken together, these provisions make plain that federal courts have been assigned plenary powers to secure compliance with Title VII.

> In addition to reposing ultimate authority in federal courts, Congress gave private individuals a significant role in the enforcement process of Title VII. Individual grievants usually initiate the Commission's investigatory and conciliatory procedures. And although the 1972 amendment to Title VII empowers the Commission to bring its own actions, the private right of action remains an essential means of obtaining judicial enforcement of Title VII. 42 U.S.C. § 2000e–5(f)(1) (1970 ed., Supp. II). In such cases, the private litigant not only redresses his own injury but also vindicates the important congressional policy against discriminatory employment practices.

*Alexander*, 415 U.S. at 44–45, 94 S.Ct. at 1018, 39 L.Ed.2d at 156. *See also Love v. Pullman Co.*, 404 U.S. 522, 527, 92 S.Ct. 616, 619, 30 L.Ed.2d 679, 685 (1972) ("[T]echnicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers initiate the process.").

Having set forth the relevant Supreme Court and Fifth Circuit caselaw, the narrow question before the Court is whether, under the facts of this case, Plaintiff should be allowed to maintain her allegations concerning sexual discrimination in the absence of any such specific charge to the EEOC and in the absence of any EEOC investigation into those allegations.

■ The Court agrees with Defendant that the *Sanchez* doctrine and the Supreme Court's decisions in *Green* and *Alexander* do not diminish the importance of the statutory policy favoring EEOC investigation and conciliation. *See generally EEOC v. Western Electric Co.*, 382 F.Supp. 787 (D.C.Md.1974); *Smith v. United Press Int'l*, 8 E.P.D. ¶ 9512 (S.D. N.Y.1974); *Kinsey v. Legg, Mason and Company, Inc.*, 60 F.R.D. 91 (D.D.C. 1973); *Oubichon v. North American Rockwell Corp.*, 482 F.2d 569 (9th Cir. 1973); *Fix v. Swinterton and Walberg Co.*, 320 F.Supp. 58 (D.Colo.1970); *Phillips v. Columbia Gas*, 347 F.Supp. 533 (S.D.W.Va.1972), *aff'd*, 474 F.2d 1342 (4th Cir. 1973); *Edwards v. North American Rockwell Corp.*, 291 F.Supp. 199 (C.D.Cal.1968). Rather, *Sanchez* holds that the "like or related to" rule protects the statutory policy favoring EEOC investigation and conciliation by not allowing a discriminator to escape a possible

lawsuit on a technicality, while giving the EEOC adequate opportunity to investigate alleged discriminations. *Sanchez*, 431 F.2d at 466–467. To effectuate this policy, *Sanchez* emphasizes that it is the factual allegations of the charge to the EEOC that must control. *Id.* at 462–464.

Nevertheless, the policy favoring reconciliation by the EEOC is not as absolute as Defendant urges. *Green, Gamble,* and *Wetzel* establish that this policy is by no means jurisdictional, and *Alexander* and *Gamble* point up other policies that must also be considered.

Defendant relies heavily on *Jiron v. Sperry Rand Corp.,* 9 E.P.D. ¶ 9990 (D.Utah 1975) [*Jiron*]. In that case, the plaintiff, having filed a sex discrimination charge with the EEOC, added racial and national origin discrimination in its complaint in federal court. The *Jiron* court distinguished the *Sanchez* "like or related to" rule on the grounds that sex discrimination is different in premise and kind from racial and national origin discrimination. Emphasizing the statutory policy of EEOC reconciliation, the *Jiron* court went on to dismiss the plaintiff's additional allegations.

The "like or related to" rule of *Sanchez*, however, does not seek the abstract comparison of different types of discrimination. Such a test would read the *Sanchez* doctrine out of existence. Instead, the *Sanchez* doctrine relies on the facts presented to the EEOC. The "like or related to" rule requires a determination of whether any additional charge in the plaintiff's federal court complaint is of a similar character or nature to that charged before the EEOC in light of the facts alleged to the EEOC. The Fifth Circuit has defined the "like or related to " rule of *Sanchez* as whether the additional complaint, and an investigation by the EEOC, could reasonably be expected to grow from the original complaint. *Gamble*, 514 F.2d at 688. In other words, if the additional charge arises naturally and logically from the facts presented to the EEOC, it is related to the original charge. *See*

*also Barnes v. Lerner Shops of Texas, Inc.,* 323 F.Supp. 617 (S.D.Tex.1971).

In this case, Plaintiff alleged to the EEOC, among other facts, that her supervisor told her that she probably did not need a job anyway, because her husband was a Caucasian. Plaintiff alleged that she was told this immediately prior to her dismissal, and within twenty-four hours after introducing her husband to her supervisor. This statement is Plaintiff's primary factual allegation of discrimination, and it clearly smacks of sexual as well as racial discrimination. A similar statement could not logically be made to a male. It is implicit in the statement that the male spouse is the more important economically, and that the dismissal might not occur had the Plaintiff been a Negro male. The failure of the EEOC to appreciate the sexual implications of this statement will not bar Plaintiff from bringing suit on sexual discrimination in federal court. *See EEOC v. MFC Services,* 10 F.E.P. Cases 943 (S.D.Miss.1975); *EEOC v. General Electric Co.,* 376 F.Supp. 757 (W.D.Va. 1974). A lay person who is a member of more than one minority group, and who feels himself discriminated against, may not be able to determine prior to an investigation on what exact basis the discrimination was incurred. Where the facts plead to the EEOC reveal the possibility of more than one type of discrimination, the complainant will not be barred from bringing suit on any basis "like or related to" the facts stated to the EEOC.

Moreover, in light of the facts of this case, the policy favoring EEOC reconciliation is clearly outweighed by the other policies discussed in *Alexander* and *Gamble*. Through interrogatories, it is evident that at the time Plaintiff's charge was before the EEOC, there were four other charges of discrimination against Defendant pending with the EEOC. Two of these additional charges were based solely on racial discrimination, one solely on sexual discrimination, and one on both racial and sexual discrimination. Though these charges were

not exactly identical to Plaintiff's, it is evident that Defendant had adequate opportunity to conciliate with the EEOC on the bases of both race and sex. *See Gamble*, 514 F.2d at 688.

In light of the number of complaints pending against Defendant at the same time, the pragmatic consideration in *Alexander* concerning the large volume of cases before the EEOC becomes more significant. Here it would certainly not be in the best interests of judicial economy to force Plaintiff to bring further action before the EEOC. *See Gamble,* 514 F.2d at 689. And to allow Defendant to avoid this action in federal court when other charges of sexual discrimination were currently pending against it would circumvent the policy of the Act. *See Alexander*, 415 U.S. at 45, 94 S.Ct. at 1018, 39 L.Ed.2d at 156. *Gamble*, 514 F.2d at 688–689; *Sanchez*, 431 F.2d at 466–467.

■ Defendant additionally seeks to dismiss Plaintiff's allegations of sex discrimination on the ground that such discrimination cannot constitute a company policy, relying on *Corne v. Bausch and Lamb, Inc.*, 390 F.Supp. 161 (D.Ariz.1975) ["*Corne*"]. *Corne* stands for the proposition that acts that are merely unwelcome sexual advances cannot constitute sexual discrimination under the Act. But *Corne* cannot be applied to the facts of this case. The major consideration in the *Corne* decision was that such advances could not be limited to the female sex, but could be made as well toward males. The Court in *Corne* concluded that such advances, therefore, did not constitute discrimination. In the present case, the facts alleged to the EEOC can only be construed as discriminatory toward the female sex. They are not, as in *Corne*, merely sexual in nature.

The Court is therefore of the opinion that Plaintiff's allegations of sexual discrimination are properly before the Court.

Accordingly, the Court ORDERS that Defendant's motion to strike allegations with respect to sexual discrimination is denied.