Rose M. WALKER, Appellant,

v.

ST. ANTHONY'S MEDICAL CENTER, a not-for-profit corporation, Appellee.

No. 88–2143.

United States Court of Appeals, Eighth Circuit.

Submitted April 13, 1989.

Decided Aug. 4, 1989.

Todd J. Aschbacher, St. Louis, Mo., for appellant.

Gerald Tockman, St. Louis, Mo., for appellee.

Before BOWMAN and WOLLMAN, Circuit Judges, and HENLEY, Senior Circuit Judge.

HENLEY, Senior Circuit Judge.

Rose M. Walker appeals from an adverse judgment in this employment discrimination action commenced by Walker under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 et seq. Walker alleged that she was discharged from her employment at St. Anthony's Medical Center because of her age and sex.[1] A jury found that she had not proved her age discrimination claim, and the district court[2] ruled against her in the sex discrimination portion of the case. For reversal, Walker argues that (1) the district court erred in concluding that the statute of limitations on her Title VII claim was not equitably tolled; (2) the district court's finding against her on the mer-

---

1. In her initial complaint, Walker also alleged that St. Anthony's violated both the ADEA and Title VII by failing to rehire her. The district court found, however, that Walker had not applied for rehiring, and granted St. Anthony's motion for summary judgment with respect to this claim.

2. The Honorable John F. Nangle, Chief Judge, United States District Court, Eastern District of Missouri.

its of her sex discrimination claim is clearly erroneous; and (3) the district court erred in refusing to submit certain proposed instructions in the age discrimination portion of the case. We affirm.

Walker is a registered nurse with a bachelor of science degree and a master's degree in business administration. In 1975 she was hired by St. Anthony's where she occupied various positions. In July of 1984, at the time of her discharge, Walker served as Coordinator of Nursing for Anthony House, a skilled nursing facility at St. Anthony's specializing in geriatric rehabilitation. Walker had served in this position since 1979. She was fifty-one years old at the time of her discharge. Walker was told that her discharge had nothing to do with her performance, but that her position was being eliminated for budgetary reasons.

Apparently Walker's responsibilities, at least initially, were assumed by Shirley Herr, the Administrator of Anthony House and Walker's former supervisor. Herr is approximately ten years younger than Walker. Herr resigned from Anthony House in the summer of 1985. Although the record is in dispute on this point, it appears that Michael Hartigan, Head Nurse under Walker, also assumed some of Walker's duties. Hartigan was promoted to a newly-created position, Director of Nursing for Anthony House, after Herr's resignation. Walker alleges that this position is substantially the same as that which she formerly occupied.

Walker contacted the Equal Employment Opportunity Commission (EEOC) immediately after her discharge and was advised that she did not have a claim unless and until her former position was filled. Walker did not discover that Hartigan had been promoted to the Director of Nursing position until July, 1985 when she read about his promotion in a hospital newsletter. Thereafter, Walker notified the EEOC, and on October 21, 1985 filed charges of age and sex discrimination with the Commis-

sion. In response, St. Anthony's filed a motion to dismiss in which it raised a statute of limitations defense on the ground that the charges were not filed within 180 days from the date of Walker's discharge. *See* 29 U.S.C. § 626(d)(1) (ADEA); 42 U.S.C. § 2000e–5(e) (Title VII). Walker responded by asserting that the 180–day period for filing charges with the EEOC should be equitably tolled until July, 1985, the publication date of the hospital newsletter, because prior thereto St. Anthony's had deliberately concealed the fact that Hartigan had filled Walker's former position.[3] The jury agreed with Walker and found that the filing requirement had been tolled on her ADEA claim; the district court, however, rejected this finding and held that Walker's Title VII claim was not timely filed. As indicated, the jury returned a verdict in favor of St. Anthony's on the merits of the age discrimination claim. The district court proceeded to consider the merits of the sex discrimination claim, and held for St. Anthony's. This appeal followed.

As mentioned, Walker first argues that the district court erred by refusing in the sex discrimination portion of the case to give reference to the jury's finding of equitable tolling. Specifically, Walker insists that the jury's view of the evidence governed the district court in its determination of the factual issues common to both claims, and that the court's refusal to give preclusive effect to the jury's finding of equitable tolling was clearly erroneous.

■ As a general rule, a charge of discrimination brought under Title VII or the ADEA must be filed with the EEOC within 180 days from the date of the alleged unlawful employment practice. 29 U.S.C. § 626(d)(1); 42 U.S.C. § 2000e–5(e); *Cobb v. Stringer*, 850 F.2d 356, 358 (8th Cir. 1988). Compliance with this time requirement is ordinarily a prerequisite to the maintenance of a civil employment discrimination action in federal court. *Cobb*, 850 F.2d at 358. However, the timely filing of

---

**3.** Specifically, Walker urged that St. Anthony's had deliberately concealed Hartigan's eventual replacement of her by temporarily eliminating her position and then recreating it under the auspices of a "new" position after Herr's resignation.

a charge with the EEOC is not a jurisdictional requirement and is subject to waiver, estoppel and equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982); *DeBrunner v. Midway Equip. Co.*, 803 F.2d 950, 952 (8th Cir.1986); *Kriegesmann v. Barry–Wehmiller Co.*, 739 F.2d 357, 360 (8th Cir.) (per curiam), *cert. denied*, 469 U.S. 1036, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984). In this circuit, the time limitations contained in Title VII and the ADEA

> will not be tolled on the basis of equitable estoppel unless the employee's failure to file in a timely fashion is the consequence either of a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing his charge.

*Kriegesmann*, 739 F.2d at 358–59 (quoting *Price v. Litton Business Sys., Inc.*, 694 F.2d 963, 965 (4th Cir.1982)).

In the ADEA portion of the case at hand, the jury answered in the affirmative interrogatories asking (1) whether St. Anthony's had "engaged in conduct which equitably tolled the time in which plaintiff could file her claim"; and (2) therefore, whether Walker "filed her charge with the EEOC within 180 days of the date that she gained actual knowledge of the facts which would support her charge of discrimination." The district court acknowledged that the jury's finding of equitable tolling was entitled to "great deference," but refused in the sex discrimination portion of the case to abide by the jury's determination because of the court's finding "that [Walker] failed to establish ... that the Title VII 180–day statute of limitations was equitably tolled by defendant's conduct." In particular, the court concluded that Walker "failed to establish that [St. Anthony's] unmistakably should have understood that its conduct after [Walker's] termination would cause [Walker] to be deprived of facts which would support a charge of discrimination."

Although the parties argue at length anent the propriety of the district court's refusal to apply the jury's finding of equitable tolling, we find it unnecessary to pass upon this issue. The district court reached the merits of Walker's sex discrimination claim and we believe that the court properly granted judgment in favor of St. Anthony's. In light of the fact that, as discussed *infra*, we affirm the district court's decision on the merits, we need not decide whether Walker's sex discrimination claim was time-barred or whether the facts required that the claim be equitably tolled. *See Boddy v. Dean*, 821 F.2d 346, 350 (6th Cir.1987) (appellate court declined to address issue of equitable tolling in sex discrimination case where district court properly granted summary judgment in favor of defendant); *see also Hutchinson Utils. Comm'n v. Curtiss–Wright Corp.*, 775 F.2d 231, 238 (8th Cir.1985) (it is established appellate procedure to refrain from addressing questions unnecessary to decision on appeal).

In ruling upon the merits of Walker's gender discrimination claim, the district court employed the traditional Title VII order and allocation of proof. Under this analysis, the plaintiff bears the initial burden of establishing a prima facie case. If the plaintiff succeeds, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged conduct. If the employer satisfies this burden, the plaintiff must then demonstrate by a preponderance of the evidence that the employer's stated justification is merely a pretext for discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973); *Griffin v. City of Omaha*, 785 F.2d 620, 625 (8th Cir.1986).

Relying upon this court's decision in *LeGrand v. Trustees of Univ. of Arkansas*, 821 F.2d 478, 480 (8th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1592, 99 L.Ed.2d 907 (1988), the district court required Walker to establish the following elements in satisfaction of her burden of proving a prima facie case of discrimination: (1) that she was a member of a protected group; (2) that she was qualified for her position and satisfied its normal requirements; (3) that she was discharged; and (4) that after her discharge, St. Antho-

ny's replaced her with, or assigned her duties to, a person outside the protected group. The district court concluded that Walker failed to establish a prima facie case because she "was replaced by, or almost all of her job duties were assigned to, Ms. Herr, a female." In addition, the district court held that St. Anthony's had "established a legitimate reason for terminating [Walker]: it decided to eliminate [her] position because the responsibilities of Ms. Herr's job could be expanded so that Ms. Walker's duties as Nursing Coordinator could become Ms. Herr's duties as Administrator of Anthony House."

On appeal, Walker argues that (1) the district court erred in concluding that she failed to establish a prima facie case merely because she was found to have been replaced by a female; (2) the court's finding that her duties were assumed by Herr, as opposed to Hartigan, is clearly erroneous; and (3) the court clearly erred in finding that St. Anthony's established a legitimate business justification for her termination. We now address each of these contentions.

■ We agree with Walker that the district court placed inordinate reliance upon its finding that she was replaced by a female. Although the elements of a prima facie case as delineated in *LeGrand* lend support to the district court's belief that Walker was required to show that she was replaced by an individual from outside the protected class in question, *see LeGrand*, 821 F.2d at 480, no such per se requirement has traditionally been imposed in cases brought under Title VII.[4] Rather, Title VII has been interpreted to require only that, in addition to the first three elements of a prima facie case, the plaintiff demonstrate that his or her discharge occurred in "circumstances which allow the court to infer unlawful discrimination." *Craik v. Minnesota State Univ. Bd.*, 731 F.2d 465, 469 (8th Cir.1984); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. at 802 & n. 13, 93 S.Ct. at 1824 & n. 13 (in discrimi-

natory hiring context, plaintiff is required to show that the position in question remained open and the employer continued to seek applications from similarly qualified applicants after the plaintiff's rejection; the case does not require the plaintiff to demonstrate that a person from outside the protected class was hired). Certainly, if a woman alleging sex discrimination is replaced by a female, this fact is relevant in evaluating the employer's motive. Nevertheless, it is entirely conceivable that a woman discharged and eventually replaced by another woman may be able to establish that she was the object of impermissible discrimination related to her gender. *See Giannotti v. Foundry Cafe*, 582 F.Supp. 503, 506 (D.Conn.1984) ("The gender of the employee who replaces a discharged Title VII plaintiff pertains to weight of evidence rather than to legal sufficiency."). The ultimate inquiry in any Title VII suit is whether the plaintiff has established that a prohibited factor played a determinative role in the employer's decision, *see LeGrand*, 821 F.2d at 480, and while we agree with the district court's ultimate conclusion that Walker failed to make such a showing, we also express some agreement with Walker's contention that the sex of her replacement, although a relevant consideration, is not necessarily a determinative factor in answer to either the initial inquiry of whether she established a prima facie case or the ultimate inquiry of whether she was the victim of discrimination.

■ The error we perceive in the district court's evaluation of whether Walker established a prima facie case does not, however, require either remand or reversal. As a reviewing court, we are permitted to "look directly to the ultimate factual issue" of whether St. Anthony's discriminated against Walker. *Griffin v. City of Omaha*, 785 F.2d at 625. Our review of the record persuades us that the district court correctly found that Walker was discharged for budgetary reasons unrelated to her sex. The record reflects that as

---

4. Currently, there is some discord with respect to whether such a requirement must be satisfied in an ADEA reduction-in-force case. *See, e.g.,*

*Montana v. First Fed. Sav. & Loan of Rochester,* 869 F.2d 100, 104–05 (2d Cir.1989).

early as 1981 St. Anthony's began experiencing economic difficulties and was faced with a possible shut-down stemming in large part from reimbursement changes in Medicaid, Medicare and private insurance programs, and the increased cost of high technology medical equipment. In response, Richard Grisham was hired as Chief Executive Officer of the hospital and was charged with the responsibility of improving the institution's economic situation. Grisham proceeded by consolidating and centralizing support services under a smaller number of management vice presidents and eliminating numerous management positions throughout the hospital.

In 1983 St. Anthony's was forced to implement staff and patient care reductions in the Anthony House program resulting in substantial part from newly-enacted Medicare regulations which restricted reimbursements to the skilled nursing program at Anthony House. The hospital cut the program's patient occupancy level by more than one-half, and reduced its nursing staff and level of per patient nursing care hours correspondingly. The hospital then determined that the maintenance of three management positions, under which Anthony House had traditionally functioned, was excessive. The three positions were that of Administrator, which was occupied by Herr; Head Nurse, occupied by Hartigan; and Nursing Coordinator, Walker's position.[5] The record demonstrates without equivocation, and Walker generally concedes, that of the three positions Nursing Coordinator was the most dispensable. Accordingly, Herr and her supervisory vice president, Allyn O'Brynne, eliminated Walker's position. Because St. Anthony's did not have a lay-off policy and there was no opportunity for Walker to transfer to another management position, she was terminated. This was also the case with the former incumbents of other management positions eliminated from 1981 through 1985.

In addition, we find support in the record for the district court's finding that the majority of Walker's duties as Nursing Coordinator were assumed by Shirley Herr. Herr was able to absorb most of the job functions of the Nursing Coordinator because seven of the ten departments under her had been centralized. Michael Hartigan also assumed some of Walker's clinical duties; Hartigan testified, however, that these were the same duties he had been performing for approximately one and one-half years prior to Walker's discharge. After Herr's resignation in the summer of 1985, Hartigan was promoted to the newly created Director of Nursing position. Significantly, our review of the record persuades us that Hartigan's new position differed greatly from the Nursing Coordinator position formerly occupied by Walker. This differentiation stems in large part from the fact that after Walker's discharge the economic atmosphere of Anthony House continued to deteriorate and eventually the facility was moved into the hospital itself. Under the supervision of Tom Long, the new Administrator, the facility instituted a home care program; as Director of Nursing, Hartigan was responsible for the clinical management of the relocated rehabilitation center and the new home care facility.

In short, the district court's finding that St. Anthony's did not intentionally discriminate against Walker is a finding of fact which we cannot characterize as clearly erroneous. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985); *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).[6] We therform affirm the dis-

---

5. The Administrator of Anthony House was generally responsible for all aspects of the facility's day-to-day management; the Head Nurse bore responsibility for the clinical aspects of daily nursing services; and the Nursing Coordinator acted as liaison between these two positions.

6. Relying upon *Vuyanich v. Republic Nat'l Bank of Dallas*, 409 F.Supp. 1083 (N.D.Tex.1976),

Walker stresses that on at least one occasion Shirley Herr commented that Walker should "quit and let her husband take care of her." Walker contends that this comment is direct evidence of discriminatory animus; appellee's brief indicates that Herr denied having made such a statement. Walker's reliance upon *Vuyanich* is misplaced; that case concerned the

trict court's judgment in the gender discrimination portion of the case.

■ Lastly, Walker argues that the district court erred in refusing to submit three jury instructions which she requested in the age discrimination portion of her case. The first such instruction, No. 14, sought to inform the jury of a requirement assertedly contained in 42 C.F.R. § 405.1124(a) (1988) to the effect that a skilled nursing facility such as Anthony House must employ a qualified registered nurse full-time as Director of Nursing, and if the Director has other institutional obligations, a qualified registered nurse must serve as the Director's assistant. Walker argues that the instruction was relevant to St. Anthony's motive in discharging her because after her termination, Anthony House was not in compliance with the regulation.

For two separate reasons, we conclude that the district court committed no error in refusing to submit the instruction. First, the precise requirements of the regulation are unclear, as demonstrated by both the interpretive guidelines thereto and the testimony of various witnesses at trial. We question the accuracy of the instruction and conclude that its submission would

likely have served only to confuse the jury. *See Board of Water Works Trustees v. Alvord, Burdick & Howson*, 706 F.2d 820, 823 (8th Cir.1983) (a party is entitled to an instruction relevant to its theory of the case provided that the instruction is legally correct and supported by the evidence). Secondly, and of equal import, we believe that at best the instruction was of specious relevance to the determination of whether St. Anthony's discriminated against Walker.

■ Walker's second alleged instructional error concerns the district court's refusal to submit proposed Instruction No. 18. This instruction was premised upon our decision in *Leftwich v. Harris–Stowe State College*, 702 F.2d 686, 691 (8th Cir.1983) (holding that a plan to reduce costs by eliminating older employees who earn higher wages is violative of the ADEA). Walker argues that since Hartigan earned less than she did, an instruction to this effect was relevant to her theory of the case.

The district court refused to submit the instruction on the ground that it was duplicative of Instructions 15 and 16, which focused upon the impropriety of an age-motivated decision.[7] We agree that to some

plaintiff's attempt to include a charge of sex discrimination, stemming from a comment made by her supervisor, in a federal employment discrimination suit after a specific charge of sex discrimination had been omitted in the complaint filed with the EEOC, and had not been investigated by the EEOC. The court in *Vuyanich* concluded that the plaintiff was entitled to include the sex discrimination claim in her federal suit and thus denied the defendant's motion to strike, *id.* at 1089. The court did not hold that the supervisor's statement entitled the plaintiff to prevail on the merits nor do we believe that Herr's statement can suffice to demonstrate that the decision to discharge Walker was based upon her gender. *See Cariddi v. Kansas City Chiefs Football Club, Inc.*, 568 F.2d 87, 88 (8th Cir.1977) (per curiam) (derogatory comments made as part of casual conversation do not necessarily rise to the level of a Title VII violation); *Morales v. Dain, Kalman & Quail, Inc.*, 467 F.Supp. 1031, 1040 (D.Minn.1979) (isolated comments do not suffice to demonstrate discriminatory animus in termination decision).

7. Instructions 15 and 16 provided in relevant part as follows:
Instruction 15:

Under federal law, it is unlawful for an employer to discharge an individual from employment because of age, when the individual is over the age of 40. The plaintiff alleges that she was discharged by defendant because of her age. In order to prevail on her claim, the plaintiff must prove the following elements:

(1) That she is over the age of 40;

(2) That she was qualified for her job in the sense that she was doing the job well enough to rule out the possibility that she was fired for inadequate job performance;

(3) That she was terminated; and

(4) That her age was a determining factor in defendant's decision to terminate her.

Instruction 16:

The ADEA makes it unlawful for an employee to discharge individuals over 40 because of their age. A 50–year old employee, for example, is entitled to protection against being replaced by a 40–year old if a determining factor in the decision to terminate is age. If you find that the plaintiff's position was not eliminated but rather that her duties were assumed by another employee, you may find that plaintiff was unlawfully discriminated against because of her age even if she was

 

extent proposed Instruction No. 18 duplicated Instruction No. 16. *See, e.g., Lackawanna Leather Co. v. Martin & Stewart, Ltd.,* 730 F.2d 1197, 1201–02 (8th Cir.1984) (instructions informing the jury in general terms of the applicable law held to have sufficiently directed the jury's attention to the issue before it). Nevertheless, we believe that under *Leftwich,* an age discrimination claimant is entitled to a separate instruction reflecting our decision in that case if such an instruction is warranted by the evidence. Significantly here, we find little evidentiary support for submission of the instruction. As discussed in an earlier portion of this opinion, the record demonstrates that Shirley Herr, not Michael Hartigan, assumed the majority of Walker's former duties; significantly, Herr received a higher salary than Walker. We similarly dispose of Walker's final alleged instructional error, which surrounds the district court's refusal to submit proposed Instruction No. 18a.[8] We find no error in the district court's determination in this regard because the proposed instruction was essentially identical to Instruction 16. In short, we believe that the charge as a whole adequately informed the jury of the relevant legal principles. *See Chohlis v. Cessna Aircraft Co.,* 760 F.2d 901, 904 (8th Cir.1985) (a district court has broad discretion concerning the language of instructions as long as the charge as a whole fairly and adequately reflects the applicable law). Thus, we conclude that no abuse resulted from the district court's refusal to submit any of the instructions at issue.

In summary, we have reviewed each of Walker's assignments of error and conclude that the judgment of the district court should be, and it is, affirmed.

WOLLMAN, Judge, concurring.

In view of our holding that the district court correctly found that Walker was discharged for budgetary reasons unrelated

to her sex, it is not necessary for us to decide whether the district court erred in concluding that Walker had failed to establish a prima facie case of discrimination. I am not persuaded that the district court erred in this regard. I would reserve until a later day the question whether a plaintiff's replacement by a person outside the protected group is an essential element of a prima facie case in a Title VII suit.

I concur fully in the remainder of the majority opinion.

---

8. Proposed Instruction No. 18a read as follows: If you find that plaintiff's job continued and [her] duties were assigned to another employ-

replaced by someone who was 40 years old or older.

ee after [her] discharge, then under the age discrimination law, there was no reduction in force ... and you may find that defendant's stated reason for discharging plaintiff was a pretext.