M. Margaret **ADAMS**, Plaintiff,

v.

**WEST PUBLISHING COMPANY**, Defendant.

Civ. No. 4–90–306.

United States District Court, D. Minnesota. Fourth Division.

Feb. 9, 1993.

James H. Kaster, John A. Fabian, and Nichols, Kaster & Anderson, and Aldo J. Terrazas, Minneapolis, MN, for plaintiff.

Linda L. Holstein, Patricia A. Bloodgood, and Earle F. Kyle, IV, and Opperman Heins & Paquin, Minneapolis, MN, for defendant.

## ORDER

DOTY, District Judge.

This matter is before the court on defendant West Publishing Company's ("West") motion for summary judgment. Based on a review of the file, record and proceedings herein, West's *motion for summary judgment will be granted.*

## BACKGROUND

West hired plaintiff M. Margaret Adams[1] on October 12, 1978, as a copy holder in its Comparing Department ("Comparing"). Adams was fifty years old. Comparing is the first step in the production process for approximately 90 percent of the products West publishes. The staff positions in Comparing run from comparer 5 to comparer 1. Comparer 1 is the highest position. By 1985, Adams had been promoted to comparer 2.

On February 25, 1985, West transferred Adams to its College and General Publication Department ("CGP") where she became a typesetting production assistant. West transferred Adams so that she could participate in its experiment typesetting college textbooks on its computerized textbook composition system. West selected Adams for that position because it expected that she would act as a liaison between the typesetters implementing the computerized composition and the comparers who would be working on the computer-composed text.

Soon thereafter, the experiment failed and West eliminated Adams's typesetting position. Adams, however, remained in CGP and became a production assistant. Adams's duties as a production assistant included assisting the production editors in the coordination and direction of the production of college textbooks. Adams excelled at her position and on May 5, 1986, West promoted her to assistant production editor.

In late 1987, West determined that it overstaffed CGP. In January 1988, West determined that it overestimated the number of manuscripts that CGP would have to edit during that year. In March 1988, West reevaluated its January 1988 forecast and further reduced its estimate of CGP's workload during 1988. Based on those estimates, West determined that it needed to reduce the number of employees assigned to CGP by ten percent.

1. The plaintiff's current surname is Brewington. When she filed this action, however, her surname was Adams. The court will refer to the plaintiff as Adams, the surname listed in the case caption.

In April 1988, West transferred eight employees, including Adams, from CGP to other departments. Adams was transferred back to Comparing. West contends that it transferred Adams back to Comparing because Comparing had too much work and it needed skilled comparers. Adams resumed work in Comparing as a comparer 1, a higher classification than the comparer 2 grade she held when West transferred her away from Comparing in 1985. Adams's salary did not change when she transferred to Comparing, but she did change job classifications, enabling her to receive overtime pay. Because of the large amount of overtime work that Adams performed in Comparing, her earnings, including overtime pay, exceeded the pay she would have received in CGP.

On January 25, 1989, Adams filed a charge with the Minnesota Department of Human Rights ("MDHR") alleging sex and age discrimination stemming from her transfer to Comparing in 1988. Adams claimed that her transfer to Comparing was humiliating and demoralizing and that West demoted her because of her sex and age. On March 6, 1990, the MDHR determined that probable cause existed to believe that Adams had been the victim of age discrimination. The MDHR determined that there was insufficient evidence on which to base a finding of probable cause of sex discrimination.

In April 1990, Adams filed a complaint[2] alleging:

1. Age discrimination under the Age Discrimination and Employment Act ("ADEA"),[3] 29 U.S.C. § 621–34, and the Minnesota Human Rights Act ("MHRA"),[4] Minn.Stat. §§ 363.01–.15;

2. Sex discrimination under Title VII of the Civil Rights Act of 1964,[5] 42 U.S.C. §§ 2000e et seq., and the MHRA;[6]

3. Retaliation in violation of the ADEA[7] and the MHRA,;[8]

4. Intentional infliction of emotional distress;[9]

5. Breach of Contract;[10]

6. Breach of Implied Covenant of Good Faith and Fair Dealing;[11]

7. Fraud, Deceit and Misrepresentation.[12]

In April 1992, West transferred Adams back to CGP and reinstated her as an assistant production editor. West contends that it transferred Adams because technological advances reduced the need for the number of people assigned to Comparing.

West now moves for summary judgment on each of Adams's claims, arguing that she cannot establish an essential factor of each claim. West contends that summary judgment is warranted on each of Adams's sex and age discrimination claims because she offers no evidence of suffering an adverse employment action. In the alternative, West argues that even if Adams established that she suffered an adverse employment action, summary judgment is still appropriate because she proffers no evidence that West's articulated reasons for transferring her from CGP to Comparing are a pretext for age or sex discrimination. West contends that summary judgment is warranted on Adams's retaliation claims because she proffers no evidence that supports those claims. West also contends that summary judgment is appropriate on Adams's intentional infliction of emotional distress claim, breach of contract claim, breach of implied covenant of good faith and fair dealing claim and fraud, deceit and

2. Adams filed her complaint in Hennepin County District Court. West removed the case to Federal District Court on April 24, 1990.

3. Count I of the amended complaint.

4. Count IV of the amended complaint.

5. Count III of the amended complaint.

6. Count V of the amended complaint.

7. Count II of the amended complaint.

8. Count VI of the amended complaint.

9. Count VII of the amended complaint.

10. Count VIII of the Amended Complaint.

11. Count IX of the amended complaint.

12. Count X of the amended complaint.

misrepresentation claim. The court, however, need not consider West's motion for summary judgment on Adams's intentional infliction of emotional distress claim, breach of contract claim, breach of implied covenant of good faith and fair dealing claim and fraud, deceit and misrepresentation claim because it dismissed those claims with prejudice pursuant to a stipulation of the parties. *See Adams v. West Publishing Co.,* Cv. No. 4–90–306 at 2 (D.Minn. Nov. 9, 1992).

## DISCUSSION

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Stated in the negative, summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine

issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552–53. With this standard at hand, the court will consider West's motion for summary judgment.

### 1. *Adams's Age Discrimination Claims*

■ The court analyzes allegations of age discrimination under the framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973); *see Hase v. Missouri Div. of Employment Sec.,* 972 F.2d 893, 895–96 (8th Cir.1992) (applying *McDonnell Douglas* framework to ADEA claim); *Halsell v. Kimberly–Clark,* 683 F.2d 285, 289–90 (8th Cir.1982) (same), *cert. denied,* 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983); *Feges v. Perkins Restaurants, Inc.,* 483 N.W.2d 701, 710 (Minn. 1992) (applying *McDonnell Douglas* framework to age discrimination claim under the MHRA (citations omitted)); *Albertson v. FMC Corp.,* 437 N.W.2d 113, 115 (Minn.Ct. App.1989) (citing *Sigurdson v. Isanti County,* 386 N.W.2d 715, 719–20 (Minn. 1986) and applying *McDonnell Douglas* framework to analyze age discrimination claim under the MHRA). Under *McDonnell Douglas,* Adams must first establish a prima facie case of discrimination. *Clements v. General Accident Ins. Co.,* 821 F.2d 489, 491 (8th Cir.1987); *Albertson,* 437 N.W.2d at 115. Although the requirements vary slightly according to individual circumstances, *Jones v. Frank,* 973 F.2d 673, 676 (8th Cir.1992) (citation omitted), to establish a prima facie case a plaintiff is generally required to show:

(1) that she was a member of the protected class;

(2) that she was performing her job well enough to rule out the possibility that she suffered adverse employment consequences as a result of inadequate job performance;

(3) that the employer took some type of adverse employment action; and

(4) that the employer did not take such action against nonmembers of the protected class.

*See e.g., Charles v. Allstate Ins. Co.,* 932 F.2d 1265, 1268 (8th Cir.1991); *Beshears v. Asbill,* 930 F.2d 1348, 1353 (8th Cir.1991); *Spear v. Dayton's,* 771 F.2d 1140, 1142–43 (8th Cir.1985); *Sigurdson,* 386 N.W.2d at 720; *Hubbard v. United Press Int'l, Inc.,* 330 N.W.2d 428, 442 (Minn.1983).

■ If Adams successfully demonstrates a prima facie case, the burden then shifts to West to articulate a nondiscriminatory reason for its employment decision. If West meets that burden, Adams must come forward with evidence showing that West's proffered reason is merely a pretext for discrimination. *See McDonnell Douglas,* 411 U.S. at 802–804, 93 S.Ct. at 1824–1825; *Beshears,* 930 F.2d at 1351; *Albertson,* 437 N.W.2d at 115. Summary judgment is appropriate unless Adams produces evidence that creates "a genuine issue of material fact as to the pretextual nature of any reasons offered by … [West] as an explanation for its actions." *Haglof v. Northwest Rehabilitation, Inc.,* 910 F.2d 492, 495 (8th Cir.1990) (Stuart, J., concurring (citations omitted)). Adams must ultimately show that her age was a determining factor in West's decision to transfer her. *Holley v. Sanyo Mfg.,* 771 F.2d 1161, 1164 (8th Cir.1985) (citations omitted).

West contends that Adams cannot establish a prima facie case of age discrimination because she fails to satisfy the third factor needed to establish such a case; that is, she proffers no facts that demonstrate that she was adversely affected by West's decision to transfer her from CGP to Comparing. West contends that because Adams earned more money after her transfer to Comparing than she did in CGP there

was no adverse employment decision. West does not contest that Adams can establish the three other factors needed to establish a prima facie case of age discrimination.

■ In order to satisfy the third factor, Adams must demonstrate that she "suffered a *materially adverse* change in the terms or conditions of [her] employment because of her employer's discriminatory conduct." *Spring v. Sheboygan Sch. Dist.,* 865 F.2d 883, 885 (7th Cir.1989) (emphasis in original) (citation omitted). An adverse employment decision "has an attendant negative result, a deprivation of position or an opportunity." *Haimovitz v. United States Dep't Justice,* 720 F.Supp. 516, 526 (W.D.Pa.1989), *aff'd,* 902 F.2d 1560 (3d Cir.1990).

■ Adams may have earned as much money in Comparing immediately after her transfer to that department as she had been making when she left CGP. That fact, however, is not dispositive of whether Adams was the victim of an adverse employment decision as West would have the court believe. The record indicates that Adams's opportunities for raises, better benefits and promotions were reduced because of her transfer to Comparing. A transfer that results in a loss of promotional opportunities or benefits constitutes an adverse employment decision. *Haimovitz,* 720 F.Supp. at 526. The court thus concludes that Adams has proffered sufficient evidence to create a material fact dispute regarding whether she was the victim of an adverse employment decision.[13] The court thus rejects West's argument that summary judgment on Adams's age discrimination claim is warranted because she cannot establish a prima facie case.

■ In the alternative, West contends that summary judgment is warranted be-

---

**13.** West failed to address in its memoranda Adams's contention that she was subject to an adverse employment action because her transfer resulted in a loss of opportunity for promotion or better benefits. West, however, did provide some evidence in the documents submitted in support of its motion that Adams had opportunities for promotion in Comparing. *See* Blood-

good Aff., Exh. 14, ¶ 14. Nevertheless, even after considering those facts, the court concludes that Adams has proffered sufficient evidence to create a material fact dispute regarding the only factor of her prima facie case that is in dispute; whether she was subject to an adverse employment decision.

cause Adams cannot show that her transfer was a pretext for discrimination. West has articulated a nondiscriminatory reason for transferring Adams; Comparing needed personnel, CGP was overstaffed and Adams had six years comparing experience. Prior to transferring Adams, West had decided to reduce the size of CGP's staff by approximately 10 percent. Bloodgood Aff., Exh. 16. West followed through on that decision. In January 1988, prior to Adams's transfer, CGP employed forty-five people; in January 1989, CGP employed thirty-six people. *Id.*, Exh. 8, ¶¶ 10–11. In addition, prior to Adams's transfer, Comparing's manager asked West to transfer employees with comparing experience[14] into her department because her department had more work than it could handle.[15] *Id.*, Exh. 14, ¶ 10. Even after it added additional employees, Comparing still had more work than its staff could handle. Adams worked large amounts of overtime after her transfer back to Comparing. *Id.*, Exh. 1, at pp. 298–300. Therefore, in order to survive West's motion for summary judgment, Adams must proffer some evidence suggesting that West's articulated nondiscriminatory reasons for transferring her were a pretext for age discrimination.

Adams asserts that the following facts demonstrate that she was the victim of age discrimination or at least create a fact dispute that cannot be resolved on a motion for summary judgment:

1. Comparing personnel are mostly women;

2. CGP employs few people over the age of forty;

3. Of the twenty-three people transferred to Comparing in 1988, nine people were between fifty-five and sixty-five years of age, six people were male and only two people had comparing experience;

4. Forty-one people retired from Comparing between 1985 and 1990; no people retired from CGP during that same period;

5. She did not utilize her comparing skills in Comparing;

6. West hired two younger women as assistant production editor positions in CGP shortly after she was transferred to Comparing; West hired a male production assistant for CGP shortly after it transferred her.

Adams contends that those facts suggest that the "only credible explanation for ... [her] transfer is discriminatory conduct by West." Memorandum in Opposition at 20. Adams thus contends that she has proffered sufficient evidence of pretext to defeat West's motion for summary judgment on her age discrimination claims.

The court finds that the evidence Adams proffers in support of her claim is not sufficient to withstand West's motion for summary judgment on her age discrimination claim. The statistical evidence does not suggest that West discriminated against Adams or any other employee on the basis of age. *See Goetz v. Farm Credit Servs.*, 927 F.2d 398, 405 (8th Cir.1991) ("statistical evidence must be of a kind or degree sufficient to raise the inference that the employment decision was based upon an impermissible factor such as age" (citation omitted)). Adams's assertion that she did not utilize any of her comparing skills after her transfer is belied by her deposition testimony which indicates that the duties she performed after her transfer involved many of her comparing skills. Adams's assertion that West hired two women younger than herself as assistant production editors is misleading. Those women were transferred to the assistant production editor positions from other positions within CGP. Moreover, even if addi-

---

**14.** Comparing needed people experienced at comparing because it often takes several years for an employee to reach the level of skill that some of the department's work requires. Bloodgood Aff., Exh. 14, ¶ 9.

**15.** The record demonstrates that Comparing needed many additional employees. In 1987, forty-three employees were added to Compar-

ing's staff. Nevertheless, Comparing employees put in 14,410 hours of overtime in 1987. Bloodgood Aff., Exh. 14, ¶ 7. Because of the excess work, Comparing hired thirty-five new employees and West transferred an additional twenty-three employees, including Adams, to Comparing in 1988. *Id.* at ¶ 10.

tional assistant production editors were needed upon Adams's transfer, that need does not create a pretext in light of West's legitimate need for her expertise in Comparing. Finally, West's hiring of a twenty-five year old man as a production assistant in CGP does not constitute evidence of discriminatory intent. The production assistant position is an entry level job and Adams had already been promoted beyond that position.

Based on the foregoing, the court concludes that even if Adams were able to carry her burden of demonstrating a prima facie case, she fails to raise a material fact dispute concerning West's pretext and thus West is entitled to summary judgment on her age discrimination claim. *See Goetz,* 927 F.2d at 406 (even if plaintiff demonstrates prima facie case, court should grant summary judgment if plaintiff fails to raise material fact dispute concerning whether defendant's proffered justification was pretextual); *Rademacher v. FMC Corp.,* 431 N.W.2d 879, 882 (Minn.Ct.App.1988) (same (citation omitted)).

### 2. *Adams's Sex Discrimination Claims*

Adams also asserts claims of sex discrimination under Title VII and the MHRA as a result of West's transfer of her to Comparing. To support her claims, Adams must show that she suffered an adverse employment action because of her sex. *See* 42 U.S.C. § 2000e–2(a)(1); Minn.Stat. § 363.-03, subd. 1(2). The court analyzes such claims under the framework set forth in *McDonnell Douglas. See Crutchfield v. Maverick Tube Corp.,* 854 F.2d 307, 308–09 (8th Cir.1988) (Title VII); *Sigurdson,* 386 N.W.2d at 719–20 (MHRA).

West contends that in order to establish a prima facie case of sex discrimination, Adams must demonstrate that West replaced her in CGP with a man having equal or lesser qualifications for the assistant editor position. West thus contends that the court should grant its motion for summary judgment on Adams's sex discrimination claims because Adams concedes that two women filled her position in CGP.

■■■ The court rejects West's legal analysis. Adams does not automatically fail to raise a prima facie case of sex discrimination because she proffers no evidence that she was replaced by a male. *Walker v. St. Anthony's Medical Center,* 881 F.2d 554, 558–59 (8th Cir.1989) (the law imposes no per se requirement on a Title VII plaintiff "to show that she was replaced by an individual from outside the protected class in question"); *but see Gray v. University of Arkansas,* 883 F.2d 1394, 1398 (8th Cir.1989) (in absence of direct evidence, a plaintiff may establish a prima facie case of sex discrimination by presenting "evidence that she was qualified for the position, was discharged, and was replaced by a man with equal of lesser qualifications" (citation omitted). "[I]t is entirely conceivable that a woman discharged and eventually replaced by another woman may be able to establish that she was the object of impermissible discrimination related to her gender." *Walker,* 881 F.2d at 558 (citation omitted). Therefore, in order to establish a prima facie case of sex discrimination, Adams must demonstrate:

(1) that she was a member of the protected class;

(2) that she was performing her job well enough to rule out the possibility that she suffered adverse employment consequences as a result of inadequate job performance;

(3) that West took some type of adverse employment action; and

(4) that her transfer occurred in "circumstances which allow the court to infer unlawful discrimination."

*Walker,* 881 F.2d at 558; *see also Jones,* 973 F.2d at 675 ("To establish a prima facie case of sex discrimination, Jones must prove by a preponderance of the evidence that she was discharged under 'circumstances which give rise to an inference of unlawful discrimination.'" (citation omitted)).

■■■ Although the court rejects West's legal analysis, it agrees with West's conclusion that Adams fails to establish a prima facie case. An examination of the record

reveals no evidence suggesting that her gender played a determinative role in West's decision to transfer her. The court thus concludes that West is entitled to summary judgment on Adams's sex discrimination claims.

The court notes that even if Adams were to carry her burden of establishing a prima facie case, the court would still grant West's motion for summary judgment on her sex discrimination claims because her claims fail for the same reason her age discrimination claims fail; she proffers no evidence that her transfer was a pretext for discrimination. *See e.g., Goetz,* 927 F.2d at 406 (even if plaintiff demonstrates prima facie case, court should grant summary judgment if plaintiff fails to raise material fact dispute concerning whether defendant's proffered justification was pretextual); *Rademacher,* 431 N.W.2d at 882 (same).

### 3. *Adams's Retaliation Claims*

 Adams also asserts claims of retaliation under the ADEA and the MHRA. The court analyzes retaliation claims under the framework set forth in *McDonnell Douglas. See Womack v. Munson,* 619 F.2d 1292, 1296 (8th Cir.1980) (analyzing Title VII retaliation claim under *McDonnell Douglas* framework), *cert. denied,* 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981); *Hubbard,* 330 N.W.2d at 444 (analyzing MHRA retaliation claim under *McDonnell Douglas* framework); *see also Wentz v. Maryland Casualty Co.,* 869 F.2d 1153, 1154–55 (8th Cir.1989) (the court analyzes ADEA retaliation claims in the same manner in which it analyzes claims brought under Title VII). In order to establish a prima facie case of retaliation, Adams must show:

(1) that she engaged in conduct protected by the ADEA or the MHRA;

(2) that she was subjected to adverse employment action at the time of, or after, the protected conduct occurred; and

(3) that a causal link exists between the protected activity and the adverse employment action.

*Wentz,* 869 F.2d at 1154–55; *Hubbard,* 330 N.W.2d at 444; *Sigurdson v. Isanti County,* 408 N.W.2d 654, 659 (Minn.Ct.App. 1987). If Adams can establish a prima facie case, the burden of production shifts to West to show some legitimate, nondiscriminatory reason for its alleged retaliation. *Womack,* 619 F.2d at 1296; *Hubbard,* 330 N.W.2d at 445. If West meets that burden, Adams must come forward with evidence showing that West's proffered reason is merely a pretext for retaliation. *Womack,* 619 F.2d at 1296; *Hubbard,* 330 N.W.2d at 445.

 Adams alleges that West retaliated against her by failing to offer her any position in CGP after she filed her claim with the MDHR on January 25, 1989. In support of her allegation, Adams states that during the MDHR's investigation of her charge her "supervisor expressed a predisposition to deny ... [her] future promotions because she had filed the charge." Amended Complaint, ¶ 19. Adams thus claims that summary judgment is inappropriate on her retaliation claims because a material fact dispute exists regarding whether West's failure to offer her a position in CGP constitutes an adverse employment action.

The court finds that Adams's argument is not persuasive and that her retaliation claim fails. Besides her allegation that she was the victim of retaliation, Adams proffers no evidence that she sought, applied for and was rejected for a position in CGP after she filed her charge with the MDHR. Thus, the only evidence suggesting that Adams was subject to an adverse employment action is that West did not transfer her back to CGP until 1992. That evidence does not establish that Adams was subject to an adverse employment action after she filed her charge, the second factor she must establish in order to carry her burden of demonstrating a prima facie case.

Adams's argument that her supervisor's comment to the MDHR investigator warrants a finding that a material fact dispute exists regarding the issue of adverse employment action is not compelling. Adams's recitation of her supervisor's com-

ment is taken somewhat out of context. Her supervisor stated that his comment to the MDHR investigator was made during a conversation in which he attempted to convey that he had no animosity toward Adams for filing her charge and that if Comparing no longer had a need for her expertise and a position in CGP became available for which she was qualified, Adams would be considered for that position along with any other qualified candidates. Bloodgood Aff., Exh. 3 at pp. 229–36. The veracity of the supervisor's statement is supported by the fact that West transferred Adams to CGP in April 1992, after Comparing's excess workload subsided. *See e.g., Haimovitz*, 720 F.Supp. at 526 (courts generally "find it difficult to believe that ... [employers] which discriminate on the basis of age would carry out their scheme by offering jobs to their targets" (citation omitted)).

The court notes that even if Adams had established a *prima facie case*, the court would nevertheless find that her retaliation claim lacks merit because she proffers no evidence suggesting that West's articulated nondiscriminatory reason for keeping her in Comparing until 1992 is a pretext for discrimination. Accordingly, the court finds that West is entitled to summary judgment on Adams's retaliation claims.

Based on the foregoing, IT IS HEREBY ORDERED that:

1. West's motion for summary judgment on Adams's age discrimination claims under the ADEA and the MHRA is granted;

2. West's motion for summary judgment on Adams's sex discrimination claims under Title VII and the MHRA is granted; and

3. West's motion for summary judgment on Adams's retaliation claims under the ADEA and the MHRA is granted.